## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**SHELLEY L. STANGLER, P.C.**
**155 MORRIS AVENUE, 2ND FLOOR**
**SPRINGFIELD, NJ 07081**
**PHONE (973) 379-2500 FAX (973) 379-0031**
**Attorney for Plaintiff**
**Attorney ID#: 023191987**

| | |
|---|---|
| **NICHOLAS F. GARREFFI,**<br><br>**Plaintiff,**<br><br>-vs-<br><br>**MARCUS O. HICKS, ESQ., COMMISSIONER OF THE NEW JERSEY STATE DEPARTMENT OF CORRECTIONS, in his official and individual capacities, FORMER NORTHERN STATE PRISON WARDEN STEVEN JOHNSON, in his official and individual capacities, "JOHN DOE" ADMINISTRATOR of the NORTHERN STATE PRISON, in his official and individual capacities, CORRECTIONS OFFICER ALLEN, in his official and individual capacities, SGT. HAMLETT, in his official and individual capacities and CORRECTIONS OFFICERS JOHN DOES 1-10, in their official and individual capacities, (as yet unidentified persons or corrections officers acting in their official and individual capacities involved in the oversight, management, monitoring, supervision and care over GARREFFI and/or who had personal involvement in the incident alleged in the complaint),**<br><br>**Defendants.** | **CIVIL ACTION**<br><br>**CASE NO:**<br><br>**COMPLAINT, JURY DEMAND, DEMAND TO IDENTIFY JOHN DOE DEFENDANTS, AND DEMAND TO PRESERVE EVIDENCE** |

Plaintiff, **NICHOLAS F. GARREFFI,** as and for his complaint against Defendants,

**MARCUS O. HICKS, ESQ., COMMISSIONER OF THE NEW JERSEY STATE**

**DEPARTMENT OF CORRECTIONS, in his official and individual capacities, FORMER**

**NORTHERN STATE PRISON WARDEN STEVEN JOHNSON, in his official and**

**individual capacities, "JOHN DOE" ADMINISTRATOR of the NORTHERN STATE**

**PRISON, in his official and individual capacities, CORRECTIONS OFFICER ALLEN, in**

his official and individual capacities, **SGT. HAMLETT,** in his official and individual capacities and **CORRECTIONS OFFICERS JOHN DOES 1-10,** in their official and individual capacities, **(as yet unidentified persons or corrections officers acting in their official and individual capacities involved in the oversight, management, monitoring, supervision and care over GARREFFI and/or who had personal involvement in the incident alleged in the complaint),** alleges as follows:

## PARTIES

1.   At all relevant times herein, Plaintiff, **NICHOLAS F. GARREFFI  ("GARREFFI"** or **"Plaintiff"),** was and is an inmate under the custodial care of the State of New Jersey, Department of Corrections, and currently incarcerated at South Woods State Prison, operated by the New Jersey State Department of Corrections ("DOC") and located at 215 S. Burlington Road, Bridgeton, New Jersey 08302..

2.      At all relevant times herein Defendant, **MARCUS O. HICKS, ESQ. ("HICKS"),** sued in his official and individual capacities, was the Commissioner of the New Jersey State Department of Corrections or Acting Commissioner with a place of business at Whittlesey Road, Trenton, Mercer County, New Jersey 08625, acting under color of law and within the scope of his employment, who was the chief supervisory official and executive of the DOC, with direct responsibility for development, promulgation, and implementation of policies and procedures relating to the custody and care of prisoners housed at all correctional facilities within the DOC, including Northern State Prison ("NSP"); policies and procedures relating to the supervision, hiring, firing, disciplining, training and oversight of corrections officers employed by  NSP**;** and ensuring that Corrections Officers adhere to all Attorney General Guidelines and laws, including but not limited to the United States Constitution and the New Jersey State Constitution.

2

3.     At all relevant times herein Defendant, **STEVEN JOHNSON ("JOHNSON"),** sued in his official and individual capacities**,** was the Warden of the NSP with a principal place of business at 168 Frontage Road, Newark, New Jersey 07124, acting under color of law and within the scope of his employment, who was responsible for operations as well as the custody and care of inmates housed at NSP; the development, promulgation, and implementation of policies and procedures relating to the custody and care of prisoners housed at  NSP and the supervision, hiring, firing, disciplining, training and oversight of corrections officers employed by NSP**,** in particular having the duty to ensure that policies relating to the use of force and provision of medical care were enforced.

4.     At all relevant times herein defendant **"JOHN DOE" ADMINISTRATOR ("THE ADMINISTRATOR"),** sued in his official and individual capacities**,** was an Administrator of the  the NSP with a principal place of business at 168 Frontage Road, Newark, New Jersey 07124, acting under color of law and within the scope of his employment, who was responsible for operations as well as the custody and care of inmates housed at NSP; the development, promulgation, and implementation of policies and procedures relating to the custody and care of prisoners housed at  NSP and the supervision, hiring, firing, disciplining, training and oversight of corrections officers employed by NSP**,** in particular having the duty to ensure that policies relating to the use of force and provision of medical care were enforced.

5.     At all relevant times herein **CORRECTIONS OFFICER ALLEN ("ALLEN"),** sued in his official and individual capacities, was a Corrections Officer on duty at NSP on November 18, 2018, responsible for the custody and care of prisoners housed at NSP, including plaintiff **GARREFFI** .

3

6.      At all relevant times herein **SGT. HAMLETT ("HAMLETT"),** sued  in his official and individual capacities,  was a supervising Sergeant on duty at NSP on November 18, 2018, responsible for the custody and care of prisoners housed at  NSP; supervising, disciplining, training and overseeing Corrections Officers employed by the NJSP**;** and ensuring that Corrections Officers abide by policy relating to the use of force and provision of medical care

7.      **CORRECTIONS OFFICERS JOHN DOES 1-10, in their official and individual capacities** are as yet unidentified persons or corrections officers acting in their official and individual capacities involved in the oversight, management, monitoring, supervision and care over **GARREFF**I and/or who had personal involvement in the incident alleged in the complaint**).**

8.      **HICKS, JOHNSON** and **THE ADMINISTRATOR** may be referred to collectively as the "**POLICY MAKER DEFENDANTS."**

## II. NATURE OF THE ACTION

9.      **GARREFFI** institutes this action for compensatory and punitive damages for the violation of both federal and state constitutional rights and pendent state claims in the use of excessive force by corrections officers at the Northern State Prison on November 18, 2018, force that was arbitrary, capricious, brutal, and lacking in any justification or need to control or maintain safety at the jail.

10.      Plaintiff further brings this action to recover damages for the violation of both federal and state constitutional rights and pendent state claims for the failure to provide proper medical attention.

11.      Plaintiff also seeks to recover damages for the **POLICYMAKER DEFENDANTS'** deliberate indifference to the constitutional rights of Plaintiff evidenced by their

toleration and acquiescence of the use of random, unjustified and excessive force and in their failure to ensure that subordinates provided appropriate medical care to inmates as well as their failure to properly hire, train, supervise and discipline corrections officers, many of whom have a history of abusing prisoners, as documented in prior lawsuits and, on information and belief, Internal Affairs investigations.

12.     The unlawful actions and conduct of the defendants evidenced a depraved and deliberate indifference to the clearly established constitutional rights of **GARREFFI,** protected and secured by the provisions of the First, Fourth, Fifth,  Eighth and Fourteenth Amendments to the United States Constitution and under the laws of the United States, brought pursuant to the Civil Rights Act, Title 42 of the United States Code, § 1983.

13.     This action is also brought pursuant to the New Jersey Civil Rights Act, Title 10 of the New Jersey Statutes for violations under the New Jersey Constitution, Article 1, §1,  as well as state causes of action sounding in negligence, assault/battery, intentional infliction of emotional distress and civil conspiracy.

14.     As a direct and proximate result of the constitutional violations and negligence **GARREFFI** suffered severe injuries, including but not limited to multiple rib fractures, a collapsed lung, pneumothorax and hemothorax, back injuries, bruising and contusions around the chest, head and back, along with post-traumatic stress disorder and emotional distress requiring counseling and mental health services at the correctional facility.

## III. JURISDICTION

15.     This Court has jurisdiction pursuant to Title 28 of the United States Code, §§1331, 1332, 1343 (2), 1343 (3), 1343 (4), and Title 42 of the United States Code, Section 1983, as well as pendent jurisdiction under 28 U.S.C. §1367 to adjudicate Plaintiff's causes of action on

the state and common law claims.

16.     In addition, Plaintiff seeks attorney's fees and costs pursuant to 42 U.S.C. §1988 for his federal claims and N.J.S.A. 10:5-27.1, N.J.S.A. 10:6-2(c) and N.J.S.A. 34:19-5(c) for his state law claims.

17.     Venue is properly laid in the United States District Court of the District of New Jersey pursuant to Title 28, United States Code §1391 (b) in that all of the acts complained of herein occurred in this District and each and every Defendant is a citizen of, resides in or is a public entity of the State of New Jersey and domiciled within this district.

18.     The matter in controversy herein involves, exclusive of interest, an amount in excess of $75,000.

19.     On or about January 16, 2019, **GARREFFI** filed a Notice of Claim under the Tort Claims Act, N.J.S.A. Title 59.  Six (6) months have elapsed since the filing of the Notice of Claim without adjustment or resolution of the claim.

## IV. <u>FACTUAL ALLEGATIONS</u>

20.     In 2017 the 43 year old male plaintiff was convicted of vehicular homicide and incarcerated at the DOC's facility in Newark, Northern State Prison ("NSP").

21.     Plaintiff had been transferred to Administrative Segregation ("Ad Seg") for four (4) months for drug use; plaintiff was psychologically impaired and turned to drugs after being held responsible for the death of a girl and was unable to be with his wife and three (3) children.

22.     Ad Seg allows very limited access outside the cell with one of the only outlets being recreation privileges once a week for an hour.

23.     The regular guard assigned to **GARREFFI**, defendant **OFFICER ALLEN**, purposefully, maliciously and regularly denied **GARREFFI** his recreation and skipped his cell

when those inmates in Ad Seg were allowed out.

24.     When **GARREFFI** again asked, as he had done several times before to be allowed his recreation, saying to **OFFICER ALLEN** "why are you skipping over me," **OFFICER ALLEN** stated "It's none of your business I can do whatever I want."

25.     The recreation hour was generally between 5 and 6 pm in the evening, **GARREFFI** would never or rarely be let out but the guards,  including **OFFICER ALLEN,** would mark it off in the log or book that **GARREFFI** had been to recreation, when in fact he had not.

26.     Several guards would curse at **GARREFFI** and make racial statements about how he, **GARREFFI** was White.  The guards cursing at him were Black or Hispanic.

27.     On November 18, 2018 at or near the time for recreation **OFFICER ALLEN** refused to permit **GARREFFI** out for recreation and an argument ensued.

28.     About 15-20 minutes later another guard came to the cell and told **GARREFFI** that "you better call Allen back here and apologize."  At that point the guard, name unknown, opened the cell door and **GARREFFI** came to the front of the cell and put his hands out for cuffing.

29.     The guard was screaming "come cuff up."

30.     At all relevant times herein **GARREFFI** had a cell mate, Justin Dolci, who witnessed some of the events and heard some of them.  Dolci later gave a statement to the Special Investigation Unit ("SID") investigating the assault detailed below and was transferred to another jail.

31.     Defendant **OFFICER ALLEN** then takes **GARREFFI** off the unit and brings him into a room where about ten (10) guards are standing.  **ALLEN** shuts the door behind him.

**GARREFFI** remains in handcuffs.

32. Defendant **SGT. HAMLETT** is in or by the room. Plaintiff cannot identify any of the other officers other than **ALLEN. SGT. HAMLETT** is keeping the door shut.

33. Plaintiff **GARREFFI** was terrified but initially thought that the corrections officers including the two (2) identified defendants were just trying to scare him.

34. Then an officer, believed to be **OFFICER ALLEN** started punching him. **GARREFFI** went to the floor but was picked up and held against the wall so the guards could keep punching him. He was punched and kicked about the head, chest and back. There were about ten (10) corrections officers either watching or actively punching and assaulting plaintiff.

35. **OFFICER ALLEN** had gloves on and **GARREFFI** believes that **ALLEN** served the first punch with the gloves. The gloves had special inserts to make the punches harder and **ALLEN,** among other officers, started to break **GARREFFI**'s ribs.

36. Either **ALLEN** or other guards began kicking **GARREFFI** with their knees as he was held up by guards in place so that the officers could keep punching and kicking him.

37. The cell mate Jason Dolci was outside of the room but could hear the beating.

38. During the beating, assault, kicking and punching **SGT. HAMLETT** was overheard by plaintiff and Dulci as saying "keep it down, keep it down."

39. After the assault, which took several minutes, the guards, incuding **OFFICER ALLEN** and **SGT. HAMLETT,** brought plaintiff back to his cell and proceeded to trash the cell and/or had trashed the cell during the beating. Everything in the cell was ruined and destroyed, with a bible thrown in the toilet, things ripped out, and whatever plaintiff had from commissary was dumped all over the place.

40. Plaintiff **GARREFFI** was in severe pain and told his bunkmate he was having

trouble breathing and that his chest area hurt badly.

41.     The guards responsible for the beating, the trashing of the cell, and all guards with knowledge of the incident, including **OFFICER ALLEN** and **SGT. HAMLETT**, failed and refused to provide any medical attention to plaintiff after the beating, and left him in his cell.

42.     At no time relevant hereto had plaintiff threatened any guards, resisted any commands by any guards, or failed to comply with any directives by any guards.[1]

43.     At no time were the actions by the guards warranted or necessary to control the inmate population or were needed to effectuate safety, protocol or control over the jail.

44.     Plaintiff's cell mate began banging on the cell door for help and other inmates also begin screaming and requesting aid for **GARREFFI.**

45.     Finally after over an hour or more a Lieutenant, unidentified, comes and brings **GARREFFI** to the medical infirmary.  On the way Plaintiff was told not to say he had been beaten and assaulted, but to say that he fell.

46.     Plaintiff did tell the nurse that he fell, as all the guards involved in the incident were all standing in the room with the nurse. Upon information and belief, the nurse said privately that **GARREFFI** had in fact been assaulted.

47.     Plaintiff was not taken to the hospital until the next day, about 24 hours after the assault occurred.  The St. Francis Hospital records state in various notations that plaintiff had either fallen or was subjected to an assault.

48.     Plaintiff was diagnosed and suffered as a direct and proximate result of the beating and assault by **OFFICER ALLEN, SGT. HAMLETT** and several as yet unidentified corrections officers at NSP multiple rib fractures, a hemothorax, a pneumothorax, bruised kidney, and

---

[1]The word "guard" is interchangeable and synonymous with "correction officer."

nerve/disc pathology to his back. He was hospitalized from November 20, 2018 at 8:15pm to November 25, 2018.

49.    Plaintiff and his cell mate Jason Dorci gave interviews to SID who conducted an investigation into the incident.   The results of same have never been released to plaintiff **GARREFFI** or counsel.

50.    Plaintiff was later transferred to South Woods State Prison.

51.    Plaintiff continues to need treatment for his injuries which has not been forthcoming despite numerous efforts to obtain treatment by requesting same from the jail staff at South Woods State Prison.

## FIRST COUNT
### 42 U.S.C. §§ 1983 - individual liability

52.     Plaintiff repeats and realleges each and every paragraph contained in the Complaint and incorporates same as if set forth fully herein at length.

53.     **GARREFFI** had a right under the Fourth Amendment of the United States Constitution to be free from and protected from the  use of excessive force.

54.     **GARREFFI,** as a convicted incarcerated person**,**  had a right under the Fourteenth and  Eighth Amendments of the United States Constitution to receive adequate medical care and to be free from cruel and unusual punishment.

55.     **GARREFFI** had a right under the First  Amendment to the  United States Constitution to be free of harassment and the use of excessive force in retaliation for complaining about wanting his recreation time; he also had a First Amendment right to access to the courts without impediment in the failure to identify defendants.

56.     **GARREFFI** had a liberty interest in bodily integrity protected by the Due Process Clauses both substantive and procedural of the Fifth and Fourteenth Amendments of the United

States Constitution.

57.     The aforementioned rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution were each clearly established as of November 18, 2018.

**Constitutional Violations by the POLICY MAKER DEFENDANTS**

58.     At all relevant times herein defendants **HICKS, JOHNSON, THE ADMINISTRATOR** and **JOHN DOES 1-10,** their employees, agents and representatives were acting under color of law under the state and federal constitutions, laws, charters, ordinances, rules, regulations, customs, usages and practices of the State of New Jersey and its agency the DOC.

59.     At all relevant times defendant **OFFICERS ALLEN** and **SGT. HAMLETT were** acting under color of law under their authority as state corrections officers.

60.      These three (3) **POLICYMAKER DEFENDANTS HICKS, JOHNSON, THE ADMINISTRATOR** and **JOHN DOES 1-10,**  knew, should have known, and were on notice of an unofficial policy, practice or custom which permitted the unimpeded, undisciplined and unremediated use of random excessive force and as well as the failure to provide medical attention to inmates under their care, custody and control and condoned, tolerated or acquiesced to such misconduct.

61.     There are multiple examples showing a history of the use of excessive force in DOC facilities both before and after the incident pled in this Complaint, known to the **POLICYMAKER DEFENDANTS**.

62.     On July 13, 2010, Sgt. Kevin Newsom attacked  inmate Bradley Peterson being housed at the New Jersey State Prison by cracking him over the head several times with an

expandable metal baton while Peterson was handcuffed, shackled and offering no resistance. Thereafter, Newsom directed his subordinate officer, SCO Israel, to write his Special Custody Reports in such a way that Newsom's misconduct would not be exposed. On January 9, 2013, Peterson filed suit, civil action No. 11-2594 (FLW).

63.     Although administrative charges were filed against Newsom who was terminated, the other involved corrections officers suffered no consequences, which further emboldened them to use excessive force on inmates.

64.     In Stokes v. Lanigan, 2012 WL 4662487 (D.N.J. 10/2/12), Jacquar Stokes sued the prior Commissioner of the DOC  and others for threats made by corrections officers as well as insufferable prison conditions, putting **HICKS, JOHNSON** and **THE ADMINISTRATOR** on notice of misconduct within the state prison system, including NSP.

65.     In 2017 a lawsuit against the prior DOC Commissioner and the DOC, 2017 WL 1050581 (D.N.J. 2017) put DOC officials on notice of allegations by Abdur-Raheem regarding a 2015 incident involving several violations of civil rights including the fabrication of disciplinary proceedings and assault by corrections officers.

66.     On October 13, 2016, the DOC issued a Preliminary Incident Report  documenting the excessive use of force on Andrew Nance, an inmate at New Jersey State Prison by a corrections officer. On June 16, 2017, Nance filed suit in the Superior Court of New Jersey, Docket No. MER-L-1209-17, against DOC corrections officers, which include allegations that a guard  knocked him to the floor, kicked and struck him with batons causing fractured ribs, lacerations to his face and scalp, and bruises and abrasions to his arms, legs, torso and head.

67.     An investigation conducted by Director Bonnie Kerness, Rachel Frome, Marshall Rountree, Jean Ross, Esq. and Lydia Thornton of the Prison Watch Community Oversight

Initiative shows that on August 11, 2016, a New Jersey State Prison inmate was physically assaulted by a correction officer while other correction officers looked on.

68.     The Prison Watch Community Oversight Initiative published its report in its March 2017 issue.   This report sets forth numerous instances of abuse, including the use of excessive force and the failures to provide medical attention:

a).     Sexual assault is rampant at the Edna Mahon Correctional Facility for Women.   In addition, there are currently several cases in suit involving sexual assault at this facility. *See,* Brown Marianne v. State of New Jersey, MER-L-000503-18, a class action complaint.

b). On November 1, 2016 a prisoner at New Jersey State Prison on constant watch to prevent suicide was challenged to a fight by a corrections officer who, along with other corrections officers, assaulted the inmate without provocation.

c)  Prisoners report that  "assaults by corrections officers are often covered up, by causing calling a suicide code to justify entering a cell without supervision by a Sgt., assaulting a prisoner and then issuing an assault code to justify the prisoner-victims injuries..."

d) On November 4, 2016 corrections officer Daniel was accused of assaulting an inmate by punching him in the face; the inmate remains constantly in pain at the New Jersey  State Prison.

e)  On November 8, 2016 a case of excessive force at the Northern State Prison is noted by an inmate who had served his 30 year sentence and was beaten by one or more guards and taken to the infirmary.

f)   On November 14, 2016 a report of sexual assault by officers in Ad Seg was made emanating out of Northern State Prison.

g)  On November 14, 2016 a report was made regarding the failure to provide medical

attention to an inmate suffering from seizures who also stated that he "watched inmates get stomped out by the [guards] various times in here and most of these nurses and doctors will cover the stuff up;" at Northern State Prison.

h) It was reported that there are frequent assaults on prisoners at Bayside Prison, racial discrimination and a carefully cultivated culture of fear and retaliation for complaints.

i) On November 22, 2016 a report of prior rape and the failure to provide psychiatric medical attention was made by an inmate at the Central Reception Assignment Facility (CRAF).

69.    On December 13, 2016, Victor Razumov sued a number of Defendants associated with the New Jersey State Prison ("NJSP"), including the State of New Jersey, the DOC, the NJSP, and several administrators as well as the prior DOC Commissioner Gary Lanigan in the District of New Jersey for excessive use of force, failure to provide adequate surveillance of Razumov (who suffered from mental illness), and failure to provide adequate supervision, training, and discipline over Corrections Officers resulting in the loss of both eyes, incidents that occurred in December 2014. See Civil Action No. 3:16-cv-9221 (BRM/TJB).   Counsel for **GARREFFI** herein represents Razumov.

70.    In or about 2017, Gary Lanigan and a DOC jail administrator were sued in the District of New Jersey by Steven Grieco, an inmate housed alone in Ad Seg at the NJSP, in connection with serious head injuries inflicted on him by NJSP Corrections Officers on March 23, 2015, Civil Action No. 15-7881 (FLW).

71.    On January 6, 2019 inmate Anthony Fontanez was brutally beaten by several suited up corrections officers without cause or provocation at Northern State Prison after complaining about having his room trashed by corrections officers.   Fontanez suffered severe fracture to his ankle requiring surgery.  A Notice of Claim has been filed by counsel representing

**GARREFFI** herein.

72.     Fontanez was again beat up by guards at South Woods State Prison after being transferred from Northern State Prison for complaining about several conditions of confinement in October 2020; he was sent to New Jersey State Prison for lockdown in Ad Seg without any basis and is appealing that decision.  Notice of Claim remains pending by counsel who also represents **GARREFFI.**

73.     On December 1, 2016 inmate David Goodall was brutally beaten at New Jersey State Prison  without cause or provocation by several corrections officers who fractured his jaw requiring surgery, among other injuries after Goodall complained about a food tray. A Complaint has been filed by counsel representing **GARREFFI** herein, civ. action no. 3:18-cv-16588.

74.     A Utube video dated February 25, 2009 uploaded on June 24, 2016 shows on camera surveillance New Jersey correctional officers assaulting an inmate without cause or provocation.

75.     On May 22, 2020 inmate Michael Martinez was brutally beaten at Bayside State prison by corrections officers without cause or provocation.  A notice of claim has been filed by counsel representing **GARREFFI** herein.

76.      On October 11, 2020 inmate Tyler Chainey was brutally beaten suffering eye and other injuries without cause or provocation at South Wood State Prison.  Notice of Claim remains pending by counsel representing **GARREFFI** herein.

77.     Many other complaints regarding abuse of inmates in the DOC system have been made.  Notice of the use of excessive force has been given by claims brought by Lester Alford, a class action lawsuit by seven (7) prisoners in the 2008 time frame against Governor Corzine and Administrator Michelle Ricci; a June 2010 movie of abuse in New Jersey state prisons and a

"Collection of Testimonies of Torture in New Jersey Prisons" by the American Friends Service Committee in February 2015, among many complaints and claims and lawsuits.

78.     The abuse within the DOC system over the last decade or more is well documented and continues unabated.

79.     Defendants **HICKS, JOHNSON** and **THE ADMINISTRATOR** had a duty under the state and federal constitution to ensure the safety and welfare of the inmates under their custodial care and provide them with an environment that maintained their right to be free of harm; this included the duty to protect the safety of any inmate and intervene to prevent harm where necessary.

80.     Defendants **HICKS, JOHNSON** and **THE ADMINISTRATOR,** despite knowledge and notice of the use of excessive force, prison abuse and the failure to provide medical attention and treatment, have failed and refused to remediate these problems despite clear knowledge that the failure to do so would be and has been substantially certain to lead to severe harm to the inmates under their care, custody and control, including plaintiff **GARREFFI.**

81.     Defendants **HICKS, JOHNSON** and **THE ADMINISTRATOR**, despite being on notice repeatedly of the use of excessive force, abuse and the failure to provide medical attention where needed across the DOC jail facilities, had a duty and obligation to investigate these allegations, commence internal affairs ("SID") investigations, and thereafter provide adequate training, supervision and discipline to the involved corrections officers in order to correct this misconduct, which did not occur.

82.     Defendants **HICKS, JOHNSON** and **THE ADMINISTRATOR** permitted, allowed, maintained and ratified a practice, custom and/or policy of failing to train, discipline and supervise corrections officers, including defendants **ALLEN** and **SGT. HAMLETT** on the use of

force, excessive and unjustified force and the circumstances requiring the need for immediate medical attention necessary to protect the safety and welfare of the prison population, including plaintiff **GARREFFI.**

83.    Defendants **HICKS, JOHNSON** and **THE ADMINISTRATOR** failed to implement and enforce policies, procedures and protocols necessary to properly train and supervise their subordinates, including defendants **ALLEN** and **SGT. HAMLETT** in the use of force, the provision of medical attention and the need to avoid abuse and to make sure that such policies, procedures and protocols would be effective in avoiding misconduct, and to ferret out misconduct.

84.    At all relevant times herein Defendants **HICKS, JOHNSON** and **THE ADMINISTRATOR** were responsible for the conduct and oversight of corrections officers, including defendants **OFFICER ALLEN** and **SGT. HAMLETT.**

85.    Defendants **HICKS, JOHNSON** and **THE ADMINISTRATOR** acted with deliberate and conscious indifference to plaintiffs' constitutional rights which violations arose out of a pattern, custom, policy or practice of said defendants in allowing and  permitting the use of random, unjustified and excessive force and the failure to provide medical attention, among other abuses without discipline or remediation, and in violating the Attorney General's own guidelines pertaining to the use of force as well as internal DOC and NSP guidelines and protocol relating to the use of force and the provision of medical attention, knowing with substantial certainty that such conduct would lead to harm and injuries to inmates, including plaintiff **GARREFFI** herein.

86.    Defendants **HICKS, JOHNSON** and **THE ADMINISTRATOR** acted with deliberate and conscious indifference to plaintiffs' constitutional rights which violations arose out of a pattern, custom, policy or practice of said defendants in the failing to enact, enforce or

implement policies and procedures on the use of force and the provision of medical attention, which failure would be known by these defendants to be substantially certain to lead to harm and injury to inmates, including plaintiff **GARREFFI** herein.

87.    The failure to discipline and conduct proper Internal Affairs reviews for those officers evidencing misconduct in the use of force and the provision of medical attention evidences deliberate indifference to the likelihood of substantial harm to inmates at the NSP, including **GARREFFI** herein.

88.    The direct actions of defendants **HICKS, JOHNSON** and **THE ADMINISTRATOR** in failing to train, supervise, monitor and discipline corrections officers using excessive force and failing to provide medical attention, as well as the failure to enact, propound and/or enforce necessary policy to avoid harm was deliberately indifferent to the constitutional rights of plaintiff **GARREFFI,** and deprived him of his constitutional due process rights, rights to be free of unlawful seizure, rights of free speech and rights to bodily integrity under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution to be vindicated under 42 U.S.C. §1983.

89.    In addition, the **POLICYMAKER DEFENDANTS** have not released or provided the names of all the officers involved in the beating, assault and incident.

90.    The **POLICYMAKER DEFENDANTS** remain under a legal duty to release, provide and identify these officers and their failure to do so constitutes a conspiracy of constitutional dimension under relevant law.

91.    Plaintiff may bring, and herein alleges, a conspiracy to cover up and deny Plaintiff **GARREFFI** his First Amendment right to access to the courts by failing to identify each officer

involved in all incidents and events, including the subject beating and failure to provide medical attention, as well as the failure to give plaintiff his recreation rights.

92.     The **POLICYMAKER** defendants **HICKS, JOHNSON** and **THE ADMINISTRATOR** know the identities of these officers and, despite being put on notice with a Notice of Claim, have failed and refused to provide those identities.

93.     The failure to produce and identify these defendants as well as the results of the SID investigation and the investigation itself leaves Plaintiff without the ability to name and timely sue said defendants, amounting to a conspiracy of which each individual **POLICYMAKER DEFENDANT** has taken part and for which each **POLICYMAKER DEFENDANT** is aware.

94.     The persons to be identified include the Administrator(s) of Northern State Prison as of and including November 18, 2018.

95.     The defendants **HICKS, JOHNSON** and **THE ADMINISTRATOR** came to a mutual agreement, either express or implied, to perform acts that violated **GARREFFI'S** federal constitutional rights, specifically to fail to release and provide the identities of all actors involved in the initial refusal to give Plaintiff his recreation rights and falsely certifying that he had been permitted that privilege; engaged in the beating and those who failed to to provide medical attention.

96.     The members of this conspiracy took steps in furtherance of this agreement.

97.     The conspiracy was developed with deliberate indifference to deprive **GARREFFI** of his federal constitutional rights.

98.     The foregoing acts of failure to train, supervise, discipline, as well as the failure to promulgate and enforce policy and to engage in a conspiracy to deny Plaintiff his right to

effectively identify and pursue each and every state employee involved in the subject events deprived Plaintiff of his rights privileges and immunities secured by the Constitution and laws of the United States.

99.    In particular, defendant **MARCUS O. HICKS, ESQ**, as the Acting Commissioner of the DOC, was apprised of all adverse events at the DOC facilities on a regular basis, including complaints and statistics regarding the use of excessive force and complaints regarding failures in medical attention.

100.    **MARCUS O. HICKS, ESQ.** was at all relevant times aware and had specific knowledge of overall complaints of abuse, use of force and lack of medical attention complaints both from his aides and officials at the DOC and the media including the Star Ledger, who did a detailed study into suicides and abuse throughout the DOC jail system pre-dating the subject events.

101.    **MARCUS O. HICKS, ESQ.**  has convened meetings to review allegations of abuse throughout the DOC system, including the use of excessive force at NSP, but failed to see to it that these problems were properly dealt with and remediated.

102.    The problems with respect to the use of random, arbitrary, excessive and brutal force continue to occur with regularity despite Cmmr. **HICK's** knowledge and even SID investigations pertaining to same.  The Chainey, Martinez and Fontanez cases cited above are perfect examples.

103.    In addition, **MARCUS O. HICKS, ESQ**., has failed and refused to identify and release the names of all the officers involved in the beating, initial denial of recreation privileges and the failure to provide medical attention, as well as to identify the Chief Administrator of Northern State Prison.

104.   **STEVEN JOHNSON** was the Warden upon information and belief at the Northern State Prison at all relevant times with direct contact with his captains and lieutenants responsible for maintaining order and safety at NSP.

105.   **JOHNSON** also at all relevant times was aware and had specific knowledge of overall complaints of abuse, use of force and lack of medical attention complaints both from his aides and administrators at NSP, from his direct contact with the inmate population and reporting from SID, as well as from the media including the Star Ledger, who did a detailed study into suicides and abuse throughout the DOC jail system pre-dating the subject events.

106.   Despite his vast knowledge of continued and chronic problems and wrongdoing by corrections officers at NSP, **JOHNSON** failed to do anything about it.

107.   The problems with respect to the use of random, arbitrary, excessive and brutal force continue to occur with regularity despite **JOHNSON'S** knowledge and even SID investigations pertaining to same.

108.   In addition, **JOHNSON** has failed and refused to identify and release the names of all the officers involved in the beating, initial denial of recreation privileges and the failure to provide medical attention, as well as failing and refusing to identify the chief administrator for NSP.

109.   **THE ADMINISTRATOR for NORTHERN STATE PRISON** also at all relevant times was aware and had specific knowledge of overall complaints of abuse, use of force and lack of medical attention complaints both from his aides and officials at NSP, from his direct contact with the inmate population and reporting from SID, as well as from the media including the Star Ledger, who did a detailed study into suicides and abuse throughout the DOC jail system pre-dating the subject events.

21

110.    Despite his/her vast knowledge of continued and chronic problems and wrongdoing by corrections officers at NSP, **THE ADMINISTRATOR** failed to do anything about it.

111.    The problems with respect to the use of random, arbitrary, excessive and brutal force continue to occur with regularity despite **THE ADMINISTRATOR'S** knowledge and even SID investigations pertaining to same.

112.    All of the **POLICYMAKER DEFENDANTS** knew that **OFFICER ALLEN** and **SGT. HAMLETT** had complaints against them for misconduct and failed to do anything about it, leading to the abject failures of policy and constitutional rights alleged herein.

113.    The failure to discipline, retrain or terminate **OFFICER ALLEN** and **SGT HAMLETT** or any of the other involved officers upon learning of the subject incident evidences a grave indifference to the constitutional rights of plaintiff **GARREFFI.**

 **Constitutional Violations by Defendants OFFICER ALLEN and SGT. HAMLETT**

114.    **OFFICER ALLEN** was a direct participant in the beating, retaliated against Plaintiff **GARREFFI** for complaining about not obtaining his recreation privileges, failed to provide medical attention after beating plaintiff up and has failed to release the names of his fellow officers involved in these events, including the beating, of which **ALLEN** has personal knowledge.

115.     **SGT HAMLETT** was a direct participant in the beating, retaliated against Plaintiff **GARREFFI** for complaining about not obtaining his recreation privileges, failed to provide medical attention after beating plaintiff up and has failed to release the names of his fellow officers involved in these events, including the beating, of which **SGT. HAMLETT** has personal knowledge.

22

116.   Any officer engaged in this wrongdoing would know that he is violating the clearly established rights of the plaintiff.

117.   Each of these defendants individually knew that beating plaintiff unprovoked without any need to control the prison population or stop violence is a clearly established violation of the Fourth and Fourteenth Amendments.

118.   Each of these defendants individually knew that retaliation against plaintiff for complaining about lack of recreation would be a violation of clearly established rights to free

119.   Each of these defendants individually knew that failing to provide needed medical attention after fracturing plaintiff's ribs and causing a collapsed lung would be a violation of clearly established rights to be free from cruel and unusual punishment under the Eighth and/or Fourteenth Amendment and/or a violation of due process under the Fifth and Fourteenth Amendments.

120.   Each of these defendants individually knew that covering up and not identifying all persons involved in the beating, retaliation and failure to provide medical attention would be a violation of a clearly established right under the First Amendment to access to the courts and constitutes a conspiracy to cover up the facts of the incident(s).

121.   As a direct and proximate result of the violation of constitutional rights as aforedescribed by defendants **HICKS, JOHNSON, THE ADMINISTRATOR, OFFICER ALLEN, SGT. HAMLETT** and **JOHN DOES 1-10,** plaintiff **NICHOLAS F. GARREFFI** has sustained serious, severe, and permanent personal and psychological injuries.

122.   **WHEREFORE**, Plaintiff **NICHOLAS F. GARREFFI** demands judgment against defendants **MARCUS O. HICKS, ESQ., COMMISSIONER OF THE NEW JERSEY STATE DEPARTMENT OF CORRECTIONS, in his official and individual capacities,**

**FORMER NORTHERN STATE PRISON WARDEN STEVEN JOHNSON, in his official and individual capacities, "JOHN DOE" ADMINISTRATOR of the NORTHERN STATE PRISON, in his official and individual capacities, CORRECTIONS OFFICER ALLEN, in his official and individual capacities, SGT. HAMLETT, in his official and individual capacities and CORRECTIONS OFFICERS JOHN DOES 1-10, in their official and individual capacities,  (as yet unidentified persons or corrections officers acting in their official and individual capacities involved in the oversight, management, monitoring, supervision and care over GARREFFI and/or who had personal involvement in the incident alleged in the complaint),** jointly and severally, for compensatory and punitive damages, interest, attorneys' fees under 42 U.S.C. §1988 and costs of suit.

<u>**SECOND COUNT**</u>
*(42 U.S.C. §1983 for Failure to Intervene)*

123.    Plaintiff repeats and realleges each and every paragraph contained in this Complaint and incorporates same as if set forth fully herein at length.

124.    The actions of defendants **ALLEN, SGT HAMLETT** and **JOHN DOES 1-10** were taken under color of state law.

125.    These defendants had a legal duty to protect **GARREFFI** from harm.

126.    These defendants failed to intervene, summon help or take other precautionary measures to prevent and/or stop any other Defendant from causing harm to **GARREFFI**.

127.    These defendants had the opportunity to intervene while **GARREFFI** was being beaten as they were all present during the beating and assault and participated in it.

128.    These defendants intentionally elected not to intervene.

129.    Defendants **ALLEN, SGT HAMLETT** and **JOHN DOES 1-10** violated **GARREFFI'S** rights under the Fourth, Eighth and Fourteenth Amendments of the United States

24

Constitution.

130.   As a direct and proximate result of Defendants' constitutional violations as aforedescribed, **GARREFFI** sustained serious, severe and permanent injuries, both physical and psychological, as well as other damages.

131.   By reason of the foregoing **GARREFFI** has been damaged.

132.   **WHEREFORE**, Plaintiff  **NICHOLAS F. GARREFFI** demands judgment against defendants **CORRECTIONS OFFICER ALLEN, in his official and individual capacities, SGT. HAMLETT, in his official and individual capacities and  CORRECTIONS OFFICERS JOHN DOES 1-10, in their official and individual capacities,  (as yet unidentified persons or corrections officers acting in their official and individual capacities involved in the oversight, management, monitoring, supervision and care over GARREFFI and/or who had personal involvement in the incident alleged in the complaint),** jointly and severally, for compensatory and punitive damages, interest, attorneys' fees under 42 U.S.C. §1988 and costs of suit.

<u>**THIRD COUNT**</u>
*(N.J.S.A.* **10:6-2:New Jersey Civil Rights Act)**

133.   Plaintiff repeats and realleges each and every paragraph contained in this Complaint and incorporates same as if set forth fully herein at length.

134.   **GARREFFI** has a state substantive due process liberty interest under the New Jersey State Constitution Article 1, §1 to be free from egregiously abusive physical conduct by law enforcement officers.

135.   **GARREFFI** had a right under the New Jersey State Constitution Article 1, §1 to be free from unreasonable seizures.

136.   **GARREFFI** had a right under the New Jersey State Constitution Article 1, §1 to

be free of retaliation for requesting any benefits due to him, here recreation as an inmate, and to be free to pursue legal claims by accessing the court without impediment.

137.   Defendants' actions were taken under color of state law.

138.   Defendants, to the same extent and pursuant to the same facts as set forth in the First Count herein and the Factual Allegations contained herein, individually and through their agents, servants and employees, and by their deliberate indifference to the civil rights of **GARREFFI** as previously detailed, deprived **GARREFFI** of his rights, privileges and immunities secured under Article I, ¶1 of the New Jersey State Constitution and under N.J.S.A. 10:6-2, the New Jersey Civil Rights Act (the "NJCRA").

139.   Defendants acted pursuant to official or unofficial policy and/or custom to deprive **GARREFFI** of his constitutional rights under Defendants' actions were willful, deliberate and malicious.

140.   By reason of the foregoing, Defendants violated the civil rights of **GARREFFI.**

141.   As a direct and proximate result of Defendants' constitutional violations as aforedescribed, **GARREFFI** sustained serious, severe and permanent injuries, both physical and psychological, as well as other damages.

142.   By reason of the foregoing **GARREFFI** has been damaged.

143.   **WHEREFORE**, Plaintiff **NICHOLAS F. GARREFFI** demands judgment against defendants **MARCUS O. HICKS, ESQ., COMMISSIONER OF THE NEW JERSEY STATE DEPARTMENT OF CORRECTIONS, in his official and individual capacities, FORMER NORTHERN STATE PRISON WARDEN STEVEN JOHNSON, in his official and individual capacities, "JOHN DOE" ADMINISTRATOR of the NORTHERN STATE PRISON, in his official and individual capacities, CORRECTIONS OFFICER ALLEN, in**

his official and individual capacities, **SGT. HAMLETT**, in his official and individual capacities and **CORRECTIONS OFFICERS JOHN DOES 1-10**, in their official and individual capacities, **(as yet unidentified persons or corrections officers acting in their official and individual capacities involved in the oversight, management, monitoring, supervision and care over GARREFFI and/or who had personal involvement in the incident alleged in the complaint),** jointly and severally, for compensatory and punitive damages, interest, attorneys' fees under 42 U.S.C. §1988 and costs of suit.

### FOURTH COUNT
**(Negligence)**

144.   Plaintiff repeats and realleges each and every allegation contained in this Complaint as if set forth fully herein at length.

145.   At all relevant times herein Defendants were under a duty to act reasonably in the performance of their duties as administrators, wardens, supervisors, and corrections officers in the control, maintenance, operation, handling and management of the jail and correctional facilities and in  the provision of medical care and treatment,  in properly supervising and monitoring **GARREFFI**, in following and promulgating appropriate policies and procedures with respect to excessive force and rendering of medical services, and to intervene to avoid and prevent physical and psychological harm to prisoners from occurring, and in providing proper training to those with the responsibility for the care and management of those under custodial or hospital care.

146.   All Defendants were under a duty to take proper action to avoid abuse and the use of excessive force.

147.   In particular, the **POLICYMAKER DEFENDANTS HICKS, JOHNSON**, the **ADMINISTRATOR** and **JOHN DOES 1-10** had a duty of reasonable care in the hiring, training, supervision and oversight of its corrections officers and to ensure that their subordinates

did not harm inmates, including plaintiff **GARREFFI** as well as in their promulgation and enforcement of policies designed to ensure inmate safety.

148. In particular, defendants **OFFICER ALLEN, SGT HAMLETT** and **JOHN DOES 1-10** had a duty of reasonable care in the handling and oversight of inmates, to ensure their safety and that they remain free from harm and protected from harm, including plaintiff **GARREFFI**.

149. All Defendants, having undertaken a duty to house and care for inmates, were obligated to have performed their duties reasonably and so as to not cause any physical or psychological harm to inmates, including **GARREFFI**.

150. The **POLICYMAKER DEFENDANTS** and **JOHN DOES 1-10** were each negligent and careless in their failure to properly hire, retain, train, discipline and supervise correctional officers, staff, employees, agents, and servants with respect to the use of force, retaliation, medical attention and conspiracy/cover up and in their failure to properly implement, enact, enforce, follow and maintain proper protocol, policy, procedures, rules and guidelines; in their failure to intervene to prevent the use of excessive  force, retaliation, and interference with provision of medical care to **GARREFFI** and other abuses  as described in this complaint,  in their failure to prevent the harm, in their failure to manage and operate their facilities in a reasonable manner so as to prevent the subject incident, and were negligent and careless in the performance of their duties, to which no immunity applies.

151. Defendants **OFFICER ALLEN, SGT. HAMLETT** and **JOHN DOES 1-10** were each negligent and careless in failing to follow policies and procedures, in their use of force, failure to provide medical attention and failure to give plaintiff his recreation and/or advise that it was not being given,  in failing to identify all officers involved in the subject events and were

negligent and careless in the performance of their ministerial duties, to which no immunity applies.

152.    The actions of Defendants did not involve the exercise of professional judgment or discretion.

153.    The personal injuries and damages suffered by **GARREFFI** were caused solely as a result of the negligence and carelessness of Defendants, individually and collectively.

154.    As a direct and proximate result of Defendants' negligence as aforedescribed, **GARREFFI** sustained serious, severe and permanent injuries, both physical and psychological, as well as other damages.

155.    By reason of the foregoing **GARREFFI** has been damaged.

156.    All conditions precedent to filing suit under Title 59 have been met, including medical expense limits, objective permanent injury and the filing of notices of claims.

157.    **WHEREFORE**, Plaintiff  **NICHOLAS F. GARREFFI** demands judgment against defendants  **MARCUS O. HICKS, ESQ., COMMISSIONER OF THE NEW JERSEY STATE DEPARTMENT OF CORRECTIONS, in his official and individual capacities, FORMER NORTHERN STATE PRISON WARDEN STEVEN JOHNSON, in his official and individual capacities, "JOHN DOE" ADMINISTRATOR of the NORTHERN STATE PRISON, in his official and individual capacities, CORRECTIONS OFFICER ALLEN, in his official and individual capacities, SGT. HAMLETT, in his official and individual capacities and CORRECTIONS OFFICERS JOHN DOES 1-10, in their official and individual capacities,  (as yet unidentified persons or corrections officers acting in their official and individual capacities involved in the oversight, management, monitoring, supervision and care over GARREFFI and/or who had personal involvement in the incident**

**alleged in the complaint),** jointly and severally, for compensatory and punitive damages, interest, attorneys' fees  and costs of suit.

**FIFTH COUNT**
**(Intentional Infliction of Emotional Distress)**

158.    Plaintiff repeats and realleges each and every allegation contained in this Complaint as if set forth fully herein at length.

159.    Each individual defendant, whose individual actions are detailed in this complaint, engaged in actions intended to inflict severe emotional trauma upon **GARREFFI,** and did so**.**

160.    The emotional distress was severe and outrageous.

161.    The emotional distress was of such character that no reasonable person could be expected to endure it.

162.    In particular, **GARREFFI** has required mental health services and his psychological condition has been severely exacerbated by the emotional distress inflicted upon him by way of the beating, retaliation, failure to provide medical attention and the continued cover up and refusal to identify the persons involved in the events alleged in this Complaint, as well as the results of the SID investigation.

163.    By reason of the aforesaid intentional emotional distress, **GARREFFI** was caused to suffer pain, suffering, humiliation, embarrassment and anguish, as well as aggravation of his pre-existing psychiatric problems, all to his damage.

164.    By reason of the foregoing **GARREFFI** has been damaged.

165.    **WHEREFORE**, Plaintiff **NICHOLAS F. GARREFFI** demands judgment against defendants   **MARCUS O. HICKS, ESQ., COMMISSIONER OF THE NEW JERSEY STATE DEPARTMENT OF CORRECTIONS, in his official and individual capacities, FORMER NORTHERN STATE PRISON WARDEN STEVEN JOHNSON, in**

his official and individual capacities, **"JOHN DOE" ADMINISTRATOR of the NORTHERN STATE PRISON, in his official and individual capacities, CORRECTIONS OFFICER ALLEN, in his official and individual capacities, SGT. HAMLETT, in his official and individual capacities and CORRECTIONS OFFICERS JOHN DOES 1-10, in their official and individual capacities,  (as yet unidentified persons or corrections officers acting in their official and individual capacities involved in the oversight, management, monitoring, supervision and care over GARREFFI and/or who had personal involvement in the incident alleged in the complaint),** jointly and severally, for compensatory and punitive damages, interest, attorneys' fees  and costs of suit.

## SIXTH COUNT
### (Assault and Battery)

166.   Plaintiff repeats and realleges each and every allegation in the Complaint as if set forth fully herein at length.

167.   As set forth in detail above, **GARREFFI** was subjected to the use of excessive force, including force that resulted multiple rib fractures and a collapsed lung with a week of hospitalization, post-traumatic stress disorder and emotional distress.

168.   The beating that comprised the excessive force and caused the foregoing injuries meets the definition of assault and battery under New Jersey common law and the criminal code.

169.   As a direct and proximate result of the assault and battery, **GARREFFI** was caused to be placed in fear of physical harm and was subjected to physical harm.

170.   The aforedescribed damages and injuries were caused solely and wholly by the intentional and willful assault and battery by **OFFICER ALLEN, SGT. HAMLETT** and **JOHN DOES 1-10.**

171.   As a direct and proximate result of defendants' assault and battery as

31

aforedescribed, **GARREFFI** sustained serious, severe and permanent injuries, both physical and psychological, as well as other damages.

172.     By reason of the foregoing **GARREFFI** has been damaged.

173.     **WHEREFORE**, Plaintiff **NICHOLAS F. GARREFFI** demands judgment against defendants **CORRECTIONS OFFICER ALLEN, in his official and individual capacities, SGT. HAMLETT, in his official and individual capacities and CORRECTIONS OFFICERS JOHN DOES 1-10, in their official and individual capacities, (as yet unidentified persons or corrections officers acting in their official and individual capacities involved in the oversight, management, monitoring, supervision and care over GARREFFI and/or who had personal involvement in the incident alleged in the complaint),** jointly and severally, for compensatory and punitive damages, interest, attorneys' fees  and costs of suit.

## SEVENTH COUNT
### (common law conspiracy)

174.     Plaintiff repeats and realleges each and every paragraph contained in this Complaint and incorporates same as if set forth fully herein at length.

175.     Defendants, both the **POLICYMAKER DEFENDANTS HICKS** and **JOHNSON**, and the correction officer defendants **OFFICER ALLEN** and **SGT HAMLETT**, each and every one of them, did conspire, act in concert together, and agree among themselves to cause injury and damage to and commit unlawful acts against plaintiff by failing to disclose the names and identities of those officers involved in the initial refusal to grant recreation privileges and then to falsely write down that plaintiff had in fact received them; to those involved in the

beating; to those involved in the failure to provide medical attention as well as refuse and fail to release the SID Investigation into the subject incident and the results thereof.

176. Each of the above mentioned defendants understood the objectives of the conspiracy scheme and accepted them, and agreed, implicitly or explicitly, to each do his part to further them.

177. The purpose of the conspiracy was to deny or limit plaintiff's ability to file a complaint naming all proper parties thus denying him access to the courts and limit his ability to present a full and complete excessive force claim against those who beat and assaulted him.

178. By reason of the foregoing, and as a direct and proximate result of the conspiracy of, and the actions of the Defendants, Plaintiffs suffered damages, including severe emotional distress, loss of reputation and loss of the ability to effectively pursue litigation and hold defendants accountable.

179. By reason of the foregoing, Plaintiffs have been damaged.

180. **WHEREFORE**, Plaintiff **NICHOLAS F. GARREFFI** demands judgment against defendants **MARCUS O. HICKS, ESQ., COMMISSIONER OF THE NEW JERSEY STATE DEPARTMENT OF CORRECTIONS, in his official and individual capacities, FORMER NORTHERN STATE PRISON WARDEN STEVEN JOHNSON, in his official and individual capacities, "JOHN DOE" ADMINISTRATOR of the NORTHERN STATE PRISON, in his official and individual capacities, CORRECTIONS OFFICER ALLEN, in his official and individual capacities, SGT. HAMLETT, in his official and individual capacities and CORRECTIONS OFFICERS JOHN DOES 1-10, in their official and individual capacities, (as yet unidentified persons or corrections officers acting in their**

**official and individual capacities involved in the oversight, management, monitoring, supervision and care over GARREFFI and/or who had personal involvement in the incident alleged in the complaint),** jointly and severally, for compensatory and punitive damages, interest, attorneys' fees  and costs of suit.

SHELLEY L. STANGLER, P.C.
Attorneys for Plaintiff

Dated:  November 17, 2020                    By:_____
                                                                            SHELLEY L. STANGLER, ESQ.

## DEMAND FOR A "LITIGATION HOLD"

Plaintiff, **NICHOLAS F. GARREFFI,** demands that each and every Defendant protect and preserve any and all documents and electronic files, including emails and text messages, that refer or relate to **NICHOLAS F. GARREFFI**; any and all training materials created or used by NSP between 2013 and the present;  the correction manual in effect during the times set forth in this Complaint;  all files that refer or relate to Defendants' investigation into  any incidents or changes pertaining to **NICHOLAS F. GARREFFI**; all internal affairs and/or investigation files that refer or relate to any incidents involving  Plaintiff or any The Defendants; and any and all other matters at issue in this litigation.  If there is any policy or procedure to automatically destroy documents or electronic files, including emails, after a specified time period to immediately suspend said policy and procedure until the conclusion of this case.

SHELLEY L. STANGLER, P.C.
Attorneys for Plaintiff

Dated:  November 17, 2020                    By:_____
                                                                            SHELLEY L. STANGLER, ESQ.

## DEMAND TO IDENTIFY ALL "JOHN DOE" DEFENDANTS

Plaintiff, **NICHOLAS F. GARREFFI** demands that, within 15 days of service of this complaint that Defendants provide the full name and address of (i) all "John Doe" officers involved in any of the event(s) or incident(s) and wrongdoing alleged in the complaint, including the administrator in charge of the Northern State Prison during the subject period, so that service can be effectuated within the 90 days Rule 4m period and in accordance with R.15(c).

SHELLEY L. STANGLER, P.C.
Attorneys for Plaintiff

Dated:  November 17, 2020          By:_____
SHELLEY L. STANGLER, ESQ.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

SHELLEY L. STANGLER, P.C.
Attorneys for Plaintiff

Dated:  November 17, 2020          By:_____
SHELLEY L. STANGLER, ESQ.

## DESIGNATION OF TRIAL COUNSEL

**SHELLEY L. STANGLER, ESQ**. is hereby designated as trial counsel on behalf of the plaintiff in the within matter.

SHELLEY L. STANGLER, P.C.
Attorneys for Plaintiff

Dated:  November 17, 2020          By:_____
SHELLEY L. STANGLER, ESQ.

35

## CERTIFICATION

1.      The firm of SHELLEY L. STANGLER, P.C. has been retained to represent Plaintiff,

**NICHOLAS F. GARREFFI** in connection with the within matter.  I am an attorney assigned to

the case.

2.      The matter in controversy is not the subject of any other action pending in any

court or of a pending arbitration proceeding, and no other action or arbitration proceeding is

contemplated by plaintiff.

3.    Other than "John Does," there are no other parties who should be joined in this action.

4.    I certify that the foregoing statements made by me are true.  I am aware that if any of

the foregoing statements made by me are willfully false, I am subject to punishment.

                                        SHELLEY L. STANGLER, P.C.
                                        Attorneys for Plaintiff

Dated:  November 17, 2020              By:_____
                                            SHELLEY L. STANGLER, ESQ.